UNITED STATES

v.

**Lorenzo D. CARTER, 446 42 6094
Senior Chief Boatswain's Mate
(E–8), U.S. Navy.**

**NMCM 85 2694.**

U.S. Navy-Marine Corps Court of
Military Review.

Sentence Adjudged 17 April 1985.

Decided 28 Oct. 1986.

LCDR ROBERT J. SMITH, JAGC, USN, Appellate Defense Counsel.

LT J. CUNYON GORDON, JAGC, USN, Appellate Defense Counsel.

LT HOWARD B. GOODMAN, JAGC, USNR, Appellate Government Counsel.

Before GORMLEY, Chief Judge, and MITCHELL and RILEY, JJ.

MITCHELL, Judge:

Appellant was tried by members court-martial on charges of dereliction of duty by failing to prevent a female from entering his stateroom; rape of a female subordinate; adultery and fraternization with a female subordinate. Contrary to his pleas he was convicted of the dereliction of duty and fraternization offenses and was sentenced to a reprimand and reduction to pay grade E–7. The case was forwarded to this Court by the Judge Advocate General, acting under authority of Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869, for review of the following issue:

WHETHER, ON OR AFTER 1 AUGUST 1984, IT IS A VIOLATION OF ARTICLE 134, UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 934, FOR A SENIOR ENLISTED SERVICEMEMBER TO FRATERNIZE ON TERMS OF MILITARY EQUALITY WITH A JUNIOR ENLISTED SERVICEMEMBER UNDER THE DIRECT SUPERVISION OF THAT SENIOR ENLISTED SERVICEMEMBER BY ENGAGING IN THE CONDUCT ALLEGED IN CHARGE III, SPECIFICATION 2 [fraternization]. SEE GENERALLY, MCM, 1984, PART IV, PARAGRAPH 83; UNITED STATES V. STOCKEN, 17 M.J. 826 (ACMR 1984).

We answer the question in the affirmative, with qualification, and affirm the findings and sentence.

 Appellant's argument that Paragraph 83b, Part IV, Manual for Courts-Martial, United States, 1984 (MCM), in plain language reveals a Presidential intent to proscribe only officer conduct and thus renders the fraternization specification defective is not sound. As the appellant's brief sets out, paragraph 83c states, in explanation of the elements of the sample specification, that:

[r]elationships between enlisted persons of different ranks, or between officers of different ranks may by [sic] similarly covered [by regulations, directives, or orders]. Violation of such regulations, directives, or orders may be punishable under Article 92.

The drafters' Analysis to paragraph 83 provides as follows:

Introduction. This paragraph is new to the Manual for Courts-Martial, although the offense of fraternization is based on longstanding custom of the services, as recognized in the sources below. Relationships between senior officers and junior officers and between noncommissioned or petty officers and their subordinates may, under some circumstances, be prejudicial to good order and discipline. This paragraph is not intended to preclude prosecution for such offenses.

MCM, Appendix 21, Analysis at A21–101 (1984). The offenses described in paragraphs 61 through 113, Part IV, MCM, are not exclusive nor is the compilation exhaustive. Id. at A21–99, MCM. Conduct not specifically proscribed in paragraphs 61 through 113 may be punished under Article 134, UCMJ, provided all other requirements

for proof are satisfied.[1] Such conduct may, without regard to Article 134, UCMJ, criteria, also be the subject of regulation and bring Article 92, UCMJ, to bear in appropriate cases. As the Analysis also makes clear, a relationship between enlisted persons, if existing under the requisite circumstances, may be punished under Article 134, UCMJ. It little matters that other service courts may not have affirmed under Article 134 enlisted fraternization convictions occurring in certain fact settings prior to 1 August 1984. *E.g. United States v. Stocken*, 17 M.J. 826 (A.C.M.R. 1984).[2] We hold that after 1 August 1984 enlisted fraternization offenses are punishable under Article 134, UCMJ, if they occur under service discrediting or discipline prejudicing circumstances, assuming adequate due process notice.

The specification of which the appellant was convicted without exception or substitution is set forth as follows:

In that Boatswain's Mate Senior Chief Lorenzo D. Carter, U.S. Navy, on active duty, ... did, on board USS POINT LOMA, from about 15 September 1984, until about 3 November 1984, knowingly and wrongfully fraternize with Boatswain's Mate Seaman [_____] ... a person assigned to the division of which the said ... Carter was division officer, on terms of military equality, to wit: by dating and ·engaging in sexual relations, in violation of the custom of the Naval Service of the United States that division officers shall not fraternize with subordinates in the division on terms of military equality.

■ Appellant, conceding the constitutionality of Article 134, UCMJ, asserts ·that he did not have notice that the alleged

misconduct violated Article 134, UCMJ, because there was no extant custom of the Navy which forbad the activity alleged. The sweeping considerations relevant to the determination of fair notice were set forth in *United States v. Van Steenwyk, supra,* the critical question being whether the accused could reasonably understand that his contemplated conduct might violate the statute. Notice can be gleaned, *inter alia,* from proof of custom, regulation, or the degree to which the alleged misconduct patently violates the specified norms of the Article. The mere fact that there is some flexibility of meaning or some difficulty in determining whether marginal actions fall within the language of the statute is not determinative. *Van Steenwyk* at 801. Labels are, thus, useful only to set the bounds of meaning and are not themselves determinative of the notice issue. *Van Steenwyk* at 809 n. 12.

■ Fraternization has a relatively precise meaning and refers to a military superior-subordinate relationship in which mutual respect of rank is ignored. *Van Steenwyk* at 809 n. 12; *United States v. Stocken, supra.* This meaning is sufficiently precise to avoid vagueness problems. The unrebutted testimony at trial of several senior enlisted personnel established the existence of a Naval customary prohibition against sexual relationships between division officers, without regard to rank, and their subordinates as well as the existence of a command instruction forbidding fraternization in any form. The command instruction, read in context, makes clear that sexual activities between male and female crew members in superior-subordinate relationships are forbidden, though the regulation could in other re-

---

**1.** Paragraph 60c(2), Part IV, MCM (1984) provides that disorders and neglects to the prejudice of good order and discipline in the armed forces can arise from the analysis of the character of the alleged misconduct which is found to be so prejudicial or from the violation of local civil law or a foreign law or the breach of the custom of the service where the requisite prejudice is found. The crucial factor is the character of the misconduct and not merely the source of the standard of conduct violated. *United*

*States v. Van Steenwyk,* 21 M.J. 795, 801 (N.M.C. M.R.1985); *United States v. Johanns,* 20 M.J. 155, 162 (C.M.A.1985) (Cox, J., concurring in part, concurring in the result in part).

**2.** Even *Stocken* logically leaves room for aggravating circumstances to alter its conclusion in that case that enlisted fraternizing relationships could not give rise to valid prosecution in the Army. *Stocken,* 17 M.J. at 829.

spects be more clearly written. In these circumstances, there is no serious due process question. *United States v. Van Steenwyk, supra.* Nor is there any serious doubt that the appellant's conduct as a senior enlisted division officer involved with a direct female subordinate in these circumstances was prejudicial to good order and discipline in the armed forces. *Cf. United States v. Johanns,* 20 M.J. at 161 (citing *United States v. Johanns,* 17 M.J. 862 (A.F.C.M.R.1983)).[3]

It is not necessary to and we do not decide the more general question of whether all intimate relations between senior enlisted personnel and their subordinates violate Article 134, UCMJ.

▮ We find that the offense of dereliction of duty by permitting a female to enter appellant's stateroom is fairly included in the allegations of the fraternization offense and constitute an integral part of that alleged relationship. Consequently,

we find that the two offenses are multiplicious for findings purposes and merge the two charges by adding the words "her, by failing to prevent her from entering his stateroom, as was his duty to do," following the word "dating" in Specification 2 of Charge III. We find no fair risk of prejudice to the sentence from the failure to so treat these offenses as multiplicious for findings.

Subject to the foregoing, the findings and sentence as approved on review below are affirmed.

Chief Judge GORMLEY and Judge RILEY concur.

---

3. The great risk in not controlling fraternization is as evident in this case as in *Van Steenwyk.* In both cases, a seemingly innocuous relationship resulted in the compromising of the status and credibility of the senior of the parties involved. Taking the evidence in this case as most likely viewed by the court in reaching its findings, the appellant tried to maintain a professionally objective relationship with Seaman _____, even to the point of becoming involved in efforts to secure her transfer from the ship while at the same time carrying on a personal relationship. Whether acting out of revenge for this action or to cover perceived problems resulting from her

being discovered by an officer upon leaving appellant's stateroom, the first casualty of this affair was the status and credibility of Senior Chief Carter. This case serves to underscore the wisdom of the comments found in *Van Steenwyk,* 21 M.J. at 808 n. 10, notwithstanding that *Van Steenwyk* was an officer case. Considering the potential importance of this problem, the best practice may be to appropriately amend the Manual for Courts-Martial to specifically clarify the intent to cover the enlisted relationship situation and redeem that intention from the relative ignominy of the Analysis.